UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| **MAXWELL BROTHERS LUMBER CO., LLC** | **PLAINTIFF** |
| v. | No. 4:18-cv-182-BJB |
| **VENEER SERVICES, LLC** | **DEFENDANT** |

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

This dispute arises from an agreement between Maxwell Brothers Lumber and Veneer Services for lumber equipment. Maxwell agreed in late 2017 to pay Veneer $458,000 to deliver a debarking system in April 2018. *See* Agreement (DN 1-2) at 1–12. Maxwell claims Veneer breached the agreement when it failed to deliver the equipment on time. MSJ (DN 49) at 2–3. Veneer tells a different story, alleging that Maxwell breached first by failing to make a payment in February. Response (DN 55) at 6–7. In Veneer's view, Maxwell's earlier breach precludes it from complaining about untimely delivery. *Id.* at 23–24.

Then, in May 2018, the plot thickened. Maxwell, upset at having paid something and receiving nothing, threatened (via text message) to sue Veneer. Text Messages (DN 49-2) at 141–146. The parties instead renegotiated the contract and agreed that Maxwell would receive a $25,000 discount and a delayed delivery beginning in September. Emails (DN 49-2) at 284–88.

That didn't happen. In October, Veneer told Maxwell the products wouldn't be ready by the fall due to supply-chain issues. Response (DN 55) at 13. After more squabbles and proposals, Maxwell ended the re-re-negotiations and filed this lawsuit. Emails (DN 49-2) at 236; Complaint (DN 1).

Neither side demanded a jury trial. After they exchanged discovery and took depositions, Maxwell filed a motion for partial summary judgment on breach. DN 49. The parties, however, agreed that some important factual questions would be left over for a bench trial regardless of the Court's summary-judgment ruling. MSJ at 3. And in light of the summary-judgment record, briefing, and argument, the Court rules that partial summary judgment is inappropriate at this juncture because genuine disputes of material fact remain. *See* FED. R. CIV. P. 56. Absent an agreement between the parties, these factual questions must be resolved through a bench trial.

*First*, did Maxwell know about the general terms and conditions that Veneer submitted during the initial negotiations? And did the parties limit, alter, or object to the terms or underlying contract in light of Veneer's submission? *See generally* KRS §§ 355.2-201(2), 355.2-207. The summary-judgment record appears to indicate that Veneer sent Maxwell an email with an initial contractual proposal and attached a set of terms and conditions that appear to be standard for Veneer sales. MSJ (DN 49) at 6; Response Br. (DN 55) at 3–4. But Maxwell rejected the contract proposal that the terms and conditions accompanied and deleted the email. *See* Maxwell Depo. (DN 49-1) at 24. Veneer followed up with a new contract proposal that did *not* attach the general terms or conditions. *Id.* at 29–30; Floyd Dep. (DN 49-2) at 112–113. No one disputes that the general terms were not signed by either party. But Kentucky law provides that unsigned agreements "[b]etween merchants" may bind parties "if within a reasonable time a writing in confirmation of the contract … is received and the party receiving it has reason to know its contents," § 355.2-201(2), and that "additional terms" may "become part of [a] contract" under some circumstances, § 355.2-207.

Whether the general terms and conditions apply affects the breach determination. But the record before the Court does not make clear whether Maxwell "had reason to know" of the contents of the oral agreement. MSJ (DN 49) at 6 (citing KRS § 355.2.201); Response (DN 55) at 3–4. Did the basic terms contained in the document serve as confirmation of an earlier oral agreement? *See* § 355.2-201(2). Or did the document introduce a new contract? *See Appalachian Fuels, LLC v. Logan & Kanawha Coal Co.*, No. 4-cv-53, 2005 WL 3132306, at *2 (E.D. Ky. Nov. 22, 2005) ("In order to satisfy the merchant's exception to the statute of frauds, it must be shown, first, that an oral agreement was reached by the parties and, second, that the writings exchanged were "confirmations" as defined by KRS 355.2-201(2)."). Did the terms and conditions memorialize a pre-existing contract, or did Maxwell's assent depend on or assume their omission from the second proposed contract? *See generally* KRS § 355.2-207. And did the general terms and conditions "materially alter" the contract Maxwell agreed to? § 355.2-207(2)(b). These are all questions unanswered by the record before the Court.

*Second*, did the parties intend for the renegotiated May contract to serve as a novation that displaced the initial contract, or as an executory accord that simply deferred enforcement of the initial obligations? In Kentucky, "a novation" is "a new contract which takes the place of the original one and in which it is merged and extinguished." *White/Reach Brannon RD., LLC v. Rite Aid of Kentucky, Inc.*, 488 S.W.3d 631, 636–37 (Ky. Ct. App. 2016). And if that "new agreement" is "inconsistent with the former agreement, so that they cannot subsist together, the old one is impliedly discharged by the new one." *Combs v. Morgan*, 211 S.W.2d 821, 825 (Ky. 1948) (quotation omitted); *see Wells Fargo Financial Kentucky, Inc. v. Thomer*, 315 S.W.3d 335, 339 (Ky. Ct. App. 2010) ("A contract novation relieves parties of the obligations under the contract and results in a new agreement."). In contrast, an

accord is "a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in settlement of the claim and to perform the agreement." *Bruestle v. S & M Motors, Inc.*, 914 S.W.2d 353, 354 n. 1 (Ky. Ct. App. 1996) (quotation omitted). If the subsequent contract is an executory accord then its breach would allow the non-breaching party to sue either on the accord or on the original obligation. *Brown v. Noland Co., Inc.*, 403 S.W.2d 33, 35 (Ky. Ct. App. 1966). Whether a contract is an accord or novation is a question of intent appropriate for resolution by the trier of fact. *Am. Dairy Queen Corp. v. Fortune St. Rsch. & Writing Inc.*, 753 F. Supp. 2d 675, 680 (W.D. Ky. 2010).

Though the record and arguments aren't crystal clear, the Court understands Maxwell's position to be that the renegotiation resulted in an accord, not a novation: in other words, deferred performance rather than replacement of the initial agreement. MSJ (DN 49) at 18. But at or before trial, Maxwell may elect to clarify its position based on the record evidence before the Court. Veneer's position, by contrast, appears to be that the renegotiation amounted to a novation that supplanted all prior contractual obligations. Response (DN 55) at 17–18. Again, resolving this question seems to turn on evidence of the principals' intent, not currently before the Court, necessary to determine the effect of the renegotiation on the initial contractual obligations.

## ORDER

The Court denies Maxwell's motion for partial summary judgment (DN 49) based on the existence of genuine issues of material fact that remain in this case. The Court sets a telephonic hearing for April 1, 2022 at 1:30 p.m. Eastern to discuss the posture of this case. The Court anticipates setting a schedule for a bench trial, final pretrial conference, and submission of proposed findings of fact and conclusions of law. The parties may of course confer with one another and with Judge Brennenstuhl as necessary to discuss a streamlined or negotiated resolution of their dispute without the need for a trial.

Benjamin Beaton, District Judge
United States District Court

March 11, 2022